# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| KEVIN FENNELL, | ) |
| Plaintiff, | ) |
| | ) No. 2:20-cv-02844-JTF-atc |
| v. | ) |
| FLOYD BONNER, ET AL., | ) |
| Defendants. | ) |

**ORDER MODIFYING THE DOCKET,
DISMISSING THE COMPLAINT WITHOUT PREJUDICE (ECF NO. 1),
GRANTING LEAVE TO AMEND,
AND DENYING MOTION FOR DISCOVERY (ECF NO. 7)**

On November 13 2020, Plaintiff Kevin Fennell, who is presently incarcerated under booking number 19120443 at Shelby County Criminal Justice Center (SCCJC) in Memphis, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.)  On November 19, 2020, the Court granted his motion to proceed *in forma pauperis*. (ECF No. 4.)  On May 19, 2021, he filed a motion for discovery. (ECF No. 7.)

Fennell's § 1983 complaint alleges claims for: inadequate medical care; discriminatory treatment; false disciplinary reports; inadequate hiring and training; and unprofessional treatment by SCCJC medical staff on September 4, 2020. (ECF No. 1 at PageID 2.)  Having sought medical care for an unspecified issue[1] while confined at SCCJC, Fennell contends that medical staff were

---

[1] Fennell submitted Inmate Grievance Forms where he provides a vague complaint of chest pain and fever.  Fennell further complains that Nurse Christian checked his blood pressure, offered him Tylenol and asked why Fennell was wasting her time. (ECF No. 1-1 at PageID 6 & 9.)

"negligent," "inadequate," and "unprofessional," and they "did not treat me." (*Id*.) Defendants later issued false disciplinary reports against him in retaliation for his complaints about staff, and they moved him into SCCJC's general population. Plaintiff names as Defendants: (1) Shelby County Sheriff Floyd Bonner; (2) Chief Deputy Kirk Fields; (3) Lieutenant E. Bunting; (4) Sergeant T. Mourning; (5) Officer S. Burton; (6) Nurse Christian; (7) CorrectCare Solutions (CCS); and (8) Shelby County Sheriff's Office (SCSO). (*Id*. at PageID 1 & 2.) He seeks: (1) money damages in varying amounts from each Defendant; and (2) "all parties' exercise [of] professional work ethic." (*Id*. at PageID 3.)

The Clerk shall modify the docket to add Shelby County as a Defendant.

**I.     LEGAL STANDARDS**

    **A.     Screening Requirements**

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint —

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the Court applies the standards of Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts a plaintiff's "well-pleaded" factual allegations as true and then determines whether the allegations "'plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of

truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

### B.     Requirements To State A Claim Under 42 U.S.C. § 1983

Plaintiff filed his complaint (ECF No. 1) pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

## II.     ANALYSIS

### A. Claims Against The SCSO & Claims Against Shelby County

Fennell names the Shelby County Sherriff's Office as a Defendant. (ECF No. 1 at PageID 2.) However, the SCSO is not a "person" subject to suit under § 1983. *See Grace v. City of Ripley, Tenn.*, No. 2:16-cv-02395, 2017 WL 835206, at *5 (W.D. Tenn. Mar. 2, 2017) ("Since the Sixth Circuit's decision in *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994), district courts in Tennessee have frequently and uniformly held that … sheriff's departments are not proper parties to a § 1983 suit").

Fennell's claims against the SCSO are therefore treated as claims against Shelby County. A local government such as a municipality or county may be held responsible for a constitutional deprivation only if there is a direct causal link between a municipal policy or custom and the alleged deprivation. *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691-92 (1978); *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). A plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)). Fennell fails to satisfy these requirements because he does not describe any Shelby County policy or custom, let alone one that is unconstitutional or that caused him injury.

Although Plaintiff does allege Sheriff Bonner's and Chief Deputy Fields's inadequate training of SCCJC personnel, *see* ECF No. 1 at PageID 2, his contention does not salvage his claims against Shelby County.  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  Success on this claim requires the party show that: "(1) the training program was inadequate to the task the officer must perform, (2) the inadequacy is a result of the municipality's deliberate indifference, and (3) the inadequacy is closely related to or actually caused the plaintiff's injury." *Epperson v. City of Humboldt, Tenn.*, 104 F. Supp. 3d 676, 684 (W.D. Tenn. 2015); *see also Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).  Deliberate indifference is a "stringent" standard, "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Epperson*, 140 F. Supp. 3d at 684 (quoting *Regents v. City of Plymouth*, 568 F. App'x 380, 394 (6th Cir. 2014)).  In other words, "a plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Bonner-Turner v. City of Ecorse*, 627 F. App'x 400, 414 (6th Cir. 2015) (quoting *Plinton v. Cnty of Summit*, 540 F.3d 459, 464 (6th Cir. 2008)).

In certain narrow circumstances, a municipality may be liable under a theory of a failure to train for a single instance of a constitutional violation for "recurring situations presenting an obvious potential for such a violation[.]" *Epperson*, 140 F. Supp. 3d at 685 (quoting *Bonner-Turner*, 627 F. App'x at 414).  Under this theory, there must be a "complete failure to train" or training so "reckless or grossly negligent" that future misconduct is "substantially certain to result." *Harvey v. Campbell Cnty.*, 453 F. App'x 557, 567 (6th Cir. 2011) (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 689, 874 (6th Cir. 1982)).  Put differently, "the need for more or

5

different training" must be obvious. *Id.* Ultimately, "mere allegations" of insufficient training or that better training could have prevented the injury do not suffice to establish a municipality's "deliberate indifference." *Id.* at 563.

As for Fennell's failure to train claim, he alleges in support only that "Floyd Bonner and Kirk Fields are responsible for the hiring and training of the employees at SCSO." (ECF No. 1 at PageID 2.) This conclusory contention does not demonstrate any of these requisite elements: inadequate training; deliberate indifference; or causal connection. *See Epperson*, 104 F. Supp. 3d at 684. Nor does he offer any facts supporting a reasonable inference that there was a "complete failure to train" or training so "reckless or grossly negligent" that the September 4, 2020 incidents were "substantially certain to result." *See Harvey*, 453 F. App'x at 567.

For all of these reasons, Fennell does not state a cognizable claim against Shelby County.

### B.  Official Capacity Claims Against Individual Defendants

To the extent Fennell pleads official capacity claims against Bonner, Fields, Bunting, Mourning, Burton, and Christian (collectively, the Individual Defendants), those claims are against the Individual Defendants' employer, Shelby County. *See Alkire,* 330 F.3d at 810 ("While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent" (quoting *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985))). Fennell's complaint, though, does not sufficiently allege a § 1983 claim against the County as explained *supra*.

Therefore, Fennell does not state a claim against any Individual Defendants in their official capacity.

### C. Claims Against CorrectCare Solutions

Fennell states that CorrectCare Solutions "is responsible for the medical staff." (ECF No. 1 at PageID 2.) Fennell sues CCS because of its supervisory capacity over the medical staffers who provide care to SCCJC inmates. He alleges no personal involvement of CCS in any putative deprivation of his constitutional rights. When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly,* 550 U.S. at 570; *see also Metcalf v. Shelby Cnty.*, No. 12-2091, 2013 WL 3432080, at *3 (W.D. Tenn. July 8, 2013).

To the extent Fennell sues CCS as the provider of health services at SCCJC, his claims fare no better. If a medical provider "performs the traditional state function of operating a prison," it may be considered as "act[ing] under the color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). To state a claim against CCS, Plaintiff must allege that his "'constitutional rights were violated and that a policy or custom' of [CCS] 'was the moving force behind the deprivation of [his] rights." *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010)). Fennell, however, does not demonstrate that CCS had a "policy or custom" that was the moving force behind a constitutional violation he sustained on September 4, 2020. Therefore, Plaintiff fails to state a claim to relief against CCS.

### D. Individual Capacity Claims Alleging Inadequate Medical Care

Fennell states that SCCJC's "medical … staff … were [sic] negligent and inadequate." (ECF No. 1 at PageID 2.) His § 1983 complaint describes neither the reason for which he sought medical care on September 4, 2020 nor the manner in which the medical staff failed to provide such. The Court liberally construes his claim as alleging denial of adequate medical care under

the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' ... proscribed by the Eighth Amendment." However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

That is, an Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298. The objective component requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897. The subjective component requires that jail officials acted with the requisite intent -- *i.e.*, had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. Plaintiffs must show that prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Seiter*, 501 U.S. at 302-03. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. An official cannot be found liable under the Eighth Amendment unless he subjectively knows of excessive risk of harm to an inmate's health and disregards it. *Id.* at 837.

Fennell's § 1983 complaint insufficiently pleads a claim for unconstitutional deprivation of medical care.

First, his pleading does not offer facts suggesting any serious medical need. (*See* ECF No. 1.) Some of the SCCJC grievances appended to his § 1983 complaint refer generally to "fever and chest pains" on September 4, 2020. *See* ECF No. 1-1 at PageID 4 & 9. However, neither the grievances nor his § 1983 complaint provide details for the Court to reasonably ascertain whether those conditions were serious enough to meet the Eighth Amendment's objective prong.

In any event, he has not demonstrated that any specific SCCJC personnel had a "sufficiently culpable state of mind" and acted with "deliberate indifference" to a health condition for which he sought care. Labels such as "negligent" and "inadequate," ECF No. 1 at PageID 2, do not satisfy the subjective prong of Eighth Amendment analysis. He does not demonstrate any Defendant's subjective knowledge, and disregard, of an excessive risk of harm to his health. He simply offers his conclusory, blanket assertion that the medical staff was "negligent and inadequate." (*Id.*)

Since the Eighth Amendment's objective prong as well as its subjective prongs must be demonstrated for a cognizable claim to relief, *see League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 525, 527 (6th Cir. 2007), Fennell fails to state a claim for constitutionally inadequate medical care.

E.  **Claim Of Discriminatory Treatment**

Fennell states that he "was subjected to cruel, unfair, and discriminatory treatment." (ECF No. 1 at PageID 2.) He does not offer any details. The Court liberally construes his contention as alleging that Defendants denied him equal protection of the law under the Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It directs that all persons similarly situated should be treated alike. It prohibits

discrimination by government which burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *See, e.g., City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *EJS Properties, LLC v. City of Toledo*, 698, F.3d 845, 864 (6th Cir. 2012). But "to establish an equal protection violation, a plaintiff must establish more than differential treatment alone -- a discriminatory intent or purpose is required." *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019) (citing *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977)). To prevail under an equal protection challenge, the claimant "must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014). A plaintiff must show that defendants intentionally treated him differently than similarly situated individuals, targeted a suspect class, or burdened a fundamental right. *Schellenberg v. Twp. of Bingham*, 436 F. App'x 587, 591 (6th Cir. 2011). Such allegations must be supported by facts. Merely alleging that an individual's actions were based upon membership in a protected class and were "supported by animosity towards [the] plaintiff" who belongs to a different [class] does not suffice. *Nali v. Ekman*, 355 F. App'x 909, 912-13 (6th Cir. 2009) (first alteration in original).

Applying these principles, Fennell's equal protection contention is insufficiently alleged. He has not offered facts demonstrating that any Defendant was motivated to treat him differently on the basis of Plaintiff's membership in a protected class. *See Nali*, 355 F. App'x at 913; *Deleon*, 739 F.3d at 918. Instead, Fennell offers only his unsupported label of "discriminatory treatment." (ECF No. 1 at PageID 2.) He fails to state a cognizable equal protection challenge under the Fourteenth Amendment.

**F. Claim Of False Disciplinary Reports**

Fennell states that after he voiced dissatisfaction with the medical staff's supposed negligence and inadequacy, Bunting ordered Burton to issue false disciplinary reports against Plaintiff "to silence me and remove me from general population." (ECF No. 1 at PageID 2.) Mourning "was the floor supervisor [who] approved the false reports." (*Id*.) Fennell's claim does not afford him relief.

A prisoner does not have a due process right to be free of false disciplinary charges. *See Upshaw v. Jones*, No. 14-2534-JDT-TMP, 2015 WL 348626, at *4 (W.D. Tenn. Jan. 26, 2015) (citing *Person v. Campbell*, 182 F.3d 918, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) (unpublished)).

Furthermore, to the extent Fennell alleges retaliation for his medical staff complaints, *see* ECF No. 1 at PageID 2, his claim is not well taken. The Court reviews Plaintiff's retaliation claim under the First Amendment. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution"). A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in ... civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391. "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ.*

*v. Doyle*, 429 U.S. 274, 287 (1977)). "Temporal proximity can provide circumstantial evidence of retaliatory motive." *Walton v. Gray*, 695 F. App'x 144, 146 (6th Cir. 2017) (citing *Hill*, 630 F.3d at 475-76). Fennell does not identify any causal connection between his reporting of medical staff's supposed inadequacy and adverse action taken against him by any named Defendant. Plaintiff does not state a First Amendment claim for unconstitutional retaliation.

Finally, to the extent Fennell alleges wrongful re-assignment to SCCJC's general population because he complained about staff, *see* ECF No. 1 at PageID 2, his claims are still unavailing. Prisoners do not have a constitutional right to be assigned to a particular prison, security classification, or housing assignment. *See Nunez v. FCI Elkton*, 32 F. App'x 724, 725 (6th Cir. 2002) ("[A] prisoner has no inherent constitutional right to be confined in a particular prison or to be held in a specific security classification"); *see also Sandin v. Conner*, 515 U.S. 472, 484–87 (1995).

For all of these reasons, Fennell fails to sufficiently plead a claim to relief for false disciplinary reports, retaliation, or wrongful housing assignment.

### G. Claim Of Unprofessional Treatment

Fennell states that "Nurse Christian was the negligent and unprofessional nurse [who] did not treat me." (ECF No. 1 at PageID 2.) He does not state a claim of constitutional magnitude.

To the extent he asserts an individual capacity claim against Nurse Christian for inadequate medical care, his claim is insufficiently alleged under the Eighth Amendment, as explained *supra*.

To the extent his claims against Nurse Christian arise from Defendant's verbal insults or harassment, Plaintiff's efforts are still unavailing. It is well settled that verbal abuse or harassment at the hands of prison officials (or other prisoners) does not constitute a violation of the Eight Amendment. *See, e.g., Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding

that even harassment that constitutes "shameful and utterly unprofessional behavior" is insufficient to constitute cruel and unusual punishment).

Fennell's allegation of Christian's "unprofessional[ism]" fails to state a claim for relief.

### H. Request For Discovery

On May 19, 2021, Fennell filed a motion "requesting that this honorable [Court] provide the defendant [sic] with all documentation in the discovery of this case." (ECF No. 7 at PageID 30.) The relief he seeks is unavailable.

Fennell must pursue his discovery requests from Defendants, in accordance with the Federal Rules of Civil Procedure -- and not via a Court order. *See*, *e.g.*, Fed. R. Civ. P. 34. *Pro se* litigants may use any of the discovery methods prescribed in the Federal Rules of Civil Procedure. There is nothing in the record suggesting that Plaintiff has ever served any discovery requests upon Defendants. There is, therefore, no discovery response that can be compelled from Defendants at this time. Furthermore, this Court has no authority to finance or pay for a party's discovery expenses even though the party has been granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a). *See Maher v. Tennessee*, No. , 2019 WL 1339602, at *2 (W.D. Tenn. Mar. 25, 2019) (internal citations omitted).

Plaintiff's motion for discovery (ECF No. 7) is **DENIED**.

### IV. AMENDMENT UNDER THE PLRA

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[W]e hold, like every other circuit to have reached the issue, that under Rule 15(a) a

13

district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA"); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded").  Leave to amend is not required where a deficiency cannot be cured.  *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed.  If it is crystal clear that ... amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts").  In this case, the Court grants Plaintiff leave to amend.

**V.      CONCLUSION**

For all of the reasons explained above:

(1)  The complaint is **DISMISSED WITHOUT PREJUDICE** in its entirety for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).  Furthermore, since Plaintiff's complaint is dismissed for failure to state a claim, his request for injunctive relief to compel Defendants' observance of "professional work ethic" care (ECF No. 1 at PageID 3) is denied as moot.  Moreover, it is not within the province of this Court to direct correctional facility employees' job performance;

(2)  Leave to amend is **GRANTED**.  Any amendment must be filed within twenty-one (21) days after the date of this order.  Plaintiff is advised that an amended complaint will supersede the original complaint and must be complete in itself without reference to the prior pleadings.  The

amended complaint must be signed, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document.  Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint.  All claims alleged in an amended complaint must arise from the facts alleged in the original complaint.  Each claim for relief must be stated in a separate count and must identify each Defendant sued in that count.  If Plaintiff fails to file an amended complaint within the time specified, the Court will dismiss this case and enter judgment.  The Court recommends that such dismissal of this case be treated as a strike pursuant to 28 U.S.C. § 1915(g).  *See Simons v. Washington*, No. 20-1406, 2021 WL 1727619, at *1 (6th Cir. May 3, 2021); and

(3)  Plaintiff's motion for discovery (ECF No. 7) is **DENIED**.

**SO ORDERED**, this 7th day of June, 2021.

                                       *s/John T. Fowlkes, Jr.*
                                       JOHN T. FOWLKES, JR.
                                       UNITED STATES DISTRICT JUDGE