### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | |
|---|---|
| KEVIN FENNELL, | ) |
| | ) |
|  Plaintiff, | ) |
| | ) |
| | )  No. 2:20-cv-02844-JTF-atc |
| | ) |
| v. | ) |
| | ) |
| | ) |
| FLOYD BONNER, ET AL., | ) |
| | ) |
|  Defendants. | ) |
| | ) |

**ORDER MODIFYING THE DOCKET,
GRANTING MOTION TO AMEND COMPLAINT (ECF NO. 9),
DISMISSING THE AMENDED COMPLAINT WITH PREJUDICE (ECF NO. 9),
DENYING LEAVE TO AMEND,
DISMISSING CASE,
CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*, AND
RECOMMENDING THAT THIS DISMISSAL BE TREATED AS A STRIKE UNDER
28 U.S.C. § 1915(g)**

On November 13 2020, Plaintiff Kevin Fennell, who is presently incarcerated under booking number 19120443 at Shelby County Criminal Justice Center (SCCJC) in Memphis, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) On November 19, 2020, the Court granted his motion to proceed *in forma pauperis*. (ECF No. 4.) On June 7, 2021, the Court dismissed Fennell's complaint without prejudice, granted leave to amend, and denied his motion for discovery. (ECF No. 8 (the Screening Order).) On June 16, 2021, Plaintiff timely filed an amended complaint (ECF No. 9), which is before the Court for screening.

Fennell's amended complaint asserts claims for: (1) inadequate medical care; (2) retaliation; (3) false disciplinary reports; (4) discriminatory treatment; (5) wrongful reassignment of housing; (6) conspiracy; (7) Shelby County Sheriff Office's failure to follow its policies; (8) "unprofessional treatment" by SCCJC medical staff; (9) failure to investigate; and (10) unconstitutional conditions of confinement. (*Id.* at PageID 47-55.) The amended complaint names as Defendants: (1) Shelby County Sheriff Floyd Bonner; (2) Chief Deputy Kirk Fields; (3) Lieutenant Erica Bunting; (4) Sergeant T. Mourning; (5) Officer S. Burton; (6) Nurse Gara Christian; (7) CorrectCare Solutions (CCS); (8) Shelby County Sheriff Office's Chief of Security Reginald Hubbard; and (9) the Shelby County Sheriff's Office (SCSO). (*Id*. at PageID 47 & 49-55.) Plaintiff seeks $200,000 in damages. (*Id*. at PageID 56.) The Clerk shall modify the docket to add SCSO's Chief of Security Reginald Hubbard as a Defendant.

For the reasons explained below, the amended complaint (ECF No. 9) is DISMISSED WITH PREJUDICE, and this case is DISMISSED.

**I.    SCREENING STANDARD & REQUIREMENTS TO STATE A CLAIM UNDER 42 U.S.C. § 1983**

The Screening Order previously detailed the screening standards and requirements to state a claim for complaints filed under § 1983. (ECF No. 8 at PageID 33-34.) They need not be restated here.

**II.    ANALYSIS**

**A.  Claims Against SCSO; Failure-To-Train Claims; Claims Against Shelby County**

Similar to his original pleading, Fennell's amended complaint again names the SCSO as a Defendant. (ECF No. 9 at PageID 47 & 49; *cf*. ECF No. 1 at PageID 2.) As the Screening Order explained, the SCSO is not a "person" subject to suit under § 1983. (ECF No. 8 at PageID 35-37.)

2

The amended complaint alleges that the SCSO "neglected to ensure that the very policy that governs this facility was upheld by the personnel that are employed here[,] [which is to] employ[] a sound correction policy, provide a safe and humane environment for both staff and inmates om which public safety is emphasized, and integrity in word and actions is practiced." (ECF No. 9 at PageID 49 (referring to cited language as "Policy 836 of this facility").) According to Fennell, SCSO violated Policy 836 because, although he wrote several "letters of complaint" about unspecified matters and he exhausted grievance procedures, "all attempts at a plausible solution were unresolved." (*Id.*)

The amended complaint describes a municipal policy, but Fennell stills fails to state a claim against SCSO. Plaintiff does not allege facts demonstrating that he suffered a constitutional deprivation because of Policy 836. Rather, Fennell simply contends that SCSO failed to follow Policy 836. He alleges that this failure was unconstitutional. However, an inmate's allegation that a defendant failed to follow correctional facility administrative policies does not, in and of itself, rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007). "A state has no federal due process obligation to follow all of its grievance procedures." *Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003) (citation omitted). Furthermore, "[t]here is no inherent constitutional right to an effective prison grievance procedure." *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citation omitted).

As in his initial pleading, Plaintiff's amended complaint alleges that SCSO Sheriff Bonner and Chief Deputy Fields failed to properly train SCCJC personnel. (ECF No. 9 at PageID 49 & 50.) However, his amendments still fail to sufficiently allege a cognizable claim for failure to train. For example, Fennell states that: (1) Bonner "fail[ed] to reprimand the personnel involved," *see id*. at PageID 49; (2) "[t]he employee hiring by Sheriff Bonner contributed to misconduct

3

within the facility," *see id.* at PageID 49; and (3) Fields has a "duty to oversee the facility." (*Id.* at PageID 50.) These blanket generalizations do not demonstrate any of the requisite elements for a prima facie claim of failure to train: *i.e.*, (1) inadequate training, (2) deliberate indifference, and (3) causal connection. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013); *Epperson v. City of Humboldt, Tenn.*, 104 F. Supp. 3d 676, 684 (W.D. Tenn. 2015). Plaintiff refers to a supposed "history of neglect and abuse at this facility." (ECF No. 9 at PageID 49.) His vague generalization does not constitute the necessary showing of "prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Bonner-Turner v. City of Ecorse*, 627 F. App'x 400, 414 (6th Cir. 2015) (internal citation omitted). Fennell's contentions are also circuitous: "The [SCSO] employees are not exercising the code of conduct and protocol, [and] therefore they couldn't be properly taught." (*Id.* at PageID 49.) There are no facts in the amended complaint affording a plausible inference of "complete failure to train" or training so "reckless or grossly negligent" that future misconduct is "substantially certain to result." *See Harvey v. Campbell Cnty.*, 453 F. App'x 557, 567 (6th Cir. 2011) (internal citation omitted). Fennell's "mere allegations" of insufficient training do not suffice to establish SCSO's deliberate indifference. *See id.* at 563. Therefore, Fennell's contentions about Bonner's and Fields's inadequate training of SCSO personnel do not salvage Plaintiff's claims against Shelby County.

For all of these reasons, the amended complaint does not state a cognizable § 1983 claim against Shelby County.

### B. Official Capacity Claims Against Individual Defendants

The amended complaint does not indicate the capacity in which Fennell sues each Defendant. To the extent Fennell pleads official capacity claims against Bonner, Fields, Bunting,

Mourning, Burton, Christian, and Hubbard (collectively, the Individual Defendants), *see* ECF No. 9 at PageID 49-55, those claims are against the Individual Defendants' employer, Shelby County. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003). Fennell's amended complaint, though, does not sufficiently allege a § 1983 claim against Shelby County as explained *supra*. Therefore, Fennell does not state a claim against any of the Individual Defendants in their official capacity.

### C. Claims Against CorrectCare Solutions

As in Fennell's original pleading, his amended complaint states that CorrectCare Solutions "is responsible for the medical staff." (ECF No. 9 at PageID 54; *cf*. ECF No. 1 at PageID 2.) Fennell states that he was "deprived of an EKG and temperature check after I voiced complaints of fever and chest pains" on September 4, 2020. (ECF No. 9 at PageID 54.) According to Plaintiff, these care denials violated SCSO Policy 652 that provides: "[I]nmates will not be subject to denial of medical services because of their inability to pay, race, religion, national origin, gender, sexual orientation, political views, or disabilities." (*Id*.) Fennell, however, does not claim that Defendants denied him an EKG or temperature check on any of these bases. At most, he suggests a difference of opinion between him and medical personnel about medical treatment. Such disagreement does not constitute an actionable Eighth Amendment claim of deliberate indifference to a serious medical need. *See Westlake v. Lucas,* 537 F.2d 857, 860 (6th Cir. 1976). Accordingly, there was no constitutional deprivation here in the first instance, let alone one that occurred pursuant to a particular CCS policy or custom.

The amended complaint does not state a claim to relief against CCS under § 1983. Fennell does not allege facts showing CCS had a "policy or custom" that was the moving force behind a constitutional violation he sustained on September 4, 2020.

### D. Individual Capacity Claims

Marked by a tremendous degree of overlapping contentions, the amended complaint relies upon many of the same factual allegations in support of several § 1983 individual capacity claims: (1) inadequate medical care; (2) retaliation; (3) false disciplinary reports; (4) denial of equal protection; and (5) wrongful reassignment of housing.  The Court considers those claims together.

Fennell experienced "fever and chest pains" on September 4, 2020.  (ECF No. 9 at PageID 50.)  He contends that Officer Burton "failed to uphold her post duties by not conducting security rounds when I initially had 'medical complications.'"  (ECF No. 9 at PageID 53.)  When Fennell's cellmate got Officer Burton's attention, Burton "called an emergency code white."  (*Id*.)  Nurse Christian "only checked [Fennell's] blood pressure and offered [him] Tylenol" after Plaintiff told her that he "was burning up, vomiting, and having chest pains."  (*Id*. at PageID 55.)  Fennell "continued to voice my medical needs but I was sent back to the pod."  (*Id*.)

After Fennell returned to his cell from SCCJC's medical office, he told Security Chief Hubbard about Burton's purported dereliction of duties.  (*Id*. at PageID 53.)  In retaliation, Officer Burton conspired with Lieutenant Bunting to remove Fennell from SCCJC's general population.  (*Id*. at PageID 48, 51-52 & 53-54.)  In support of Fennell's disciplinary conviction, Burton asserted false disciplinary claims against him, for which he was relocated to pre-detention housing.  (*Id*. at PageID 48.)  "Burton's motivating factor was that I could potentially have her suspended if I continued to expose their shortcomings and wrongdoing."  (*Id*. at PageID 54.)

None of these factual allegations give rise to a colorable § 1983 claim, as explained *infra*.

(1) Even assuming for screening purposes that chest pains might constitute an objectively serious medical need in particular circumstances[1], the amended complaint does not

---

[1] The amended complaint states that Fennell's chest pains and fever were "serious." (ECF No. 9 at PageID 55.)  However, Plaintiff does not claim to have experienced any further symptoms after he returned to his cell from SCCJC's medical facility.  (*Id*. at PageID 54-55.)  The Court

6

demonstrate that any specific Defendant had a "sufficiently culpable state of mind" and acted with "deliberate indifference" to Fennell's healthcare on September 4, 2020.  The amended complaint opines that "chest pains / heart have the objective need for an EKG[,] and a fever requires a temperature check in all circumstances."  (*Id*. at PageID 55.)  At most, the amended complaint describes an interpersonal conflict, which does not equate with unconstitutional deliberate indifference.  (*See id*. (Nurse Christian "should … not [have] conducted herself in an unprofessional manner").)  The amended complaint does not state a § 1983 claim to relief for inadequate medical care.

(2)     The amended complaint states that, after Fennell complained to Hubbard about Bunting's and Burton's failures to properly conduct rounds, Bunting told Burton to issue "fabricated" charges against Fennell in order to have him removed to segregated confinement.  Once there, Plaintiff lost over $45 in commissary account funds, had no phone or recreation privileges, was confined to his cell for 24 hours each day, and had no cleaning supplies.  (*Id*. at PageID 48, 50 & 54 (alleging retaliation for Fennell's complaints about Bunting's and Burton's security performance); *cf*. ECF No. 1 at PageID 2 (alleging retaliation for Fennell's medical staff complaints).)  Fennell alleges that Bunting's and Burton's conduct violated SCSO Policy 836.06, which proscribes "personal abuse, corporal punishment, personal injury, disease, property damage, or harassment."  (*Id*. at PageID 48.)  Fennell spent only 11 days in segregated housing and the charges were dismissed, "but the damage was done" he says.  (*Id*. at PageID 48.)  Plaintiff's amended allegations do not set forth a claim of constitutional magnitude.  Conduct that "would not deter a person of 'ordinary firmness' from pursuing constitutional grievances," *see Thaddeus-*

---

makes no determination whether Fennell has sufficiently alleged the Eighth Amendment's objective prong.  Plaintiff's failure to demonstrate its subjective prong defeats his inadequate medical care claim.

7

*X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc), does not rise to the level of unconstitutional retaliation. "[P]risoners are expected to endure more than the average citizen," and so not every objectionable act directed at a prisoner constitutes adverse action sufficient to deter a person of ordinary firmness from engaging in protected activities. *See White v. Stephens*, No. 13-2173, 2015 WL 6038014, at *6 (W.D. Tenn. Aug. 28, 2015). Bunting's and Burton's conduct did not inhibit Fennell from accessing the courts and did not deter him from pursuing this case. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002). The amended complaint does not allege facts constituting adverse action for § 1983 retaliation purposes.

(3)   As to amended claims of false disciplinary charges, Bunting's and Burton's "fabricated" charges against Fennell were for: (a) disturbances; (b) refusal of staff orders; and (c) disrespect of staff. (ECF No. 9 at PageID 48; *cf*. ECF No. 1 at PageID 2.) Fennell argues that Defendants failed to "act[] within guidelines when I was unfairly accused of multiple infractions." (*Id*. at PageID 50.) Since the time of the Screening Order (ECF No. 8), there has been no change in the relevant governing law -- *i.e.*, a prisoner does not have a due process right to be free of false disciplinary charges. *See Upshaw v. Jones*, No. 14-2534-JDT-TMP, 2015 WL 348626, at *4 (W.D. Tenn. Jan. 26, 2015) (internal citation omitted). The amended complaint alleges no facts that alter the Screening Order's ruling that Fennell fails to state a claim to relief for false disciplinary charges. (*See* ECF No. 8 at PageID 42.)

(4)   As to deprivation of equal protection, the amended complaint alleges that SCSO "deprived [Fennell] of exercising [his] inmate rights of this facility[,] thus subjecting [him] to discrimination." (ECF No. 9 at PageID 49 & 50 ("I was discriminated against by the jail personnel because I voice[d] my concerns of misconduct"); *cf*. ECF No. 1 at PageID 2.) In support of this claim, Fennell makes a blanket accusation that "[i]t is clear that there is a history of neglect and

abuse at this facility." (ECF No 9 at PageID 49.)  That vague generalization does not demonstrate that any of the Defendants were motivated to treat Plaintiff differently on the basis of his membership in a protected class.  *See Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014); *Nali v. Ekman*, 355 F. App'x 909, 912-13 (6th Cir. 2009).  The amended complaint alleges no facts that change the Court's prior determination that Fennell fails to state a cognizable equal protection challenge.  (*See* ECF No. 8 at PageID 40-41.)

(5) As to wrongful re-assignment of Fennell from SCCJC's general population because he complained about staff, the amended complaint is still unavailing under § 1983. (ECF No. 9 at PageID 48, 51-52 & 53-54; *cf*. ECF No. 1 at PageID 2.)  Prisoners do not have a constitutional right to be assigned to a particular prison, security classification, or housing assignment.  *See Sandin v. Conner*, 515 U.S. 472, 484–87 (1995); *Nunez v. FCI Elkton*, 32 F. App'x 724, 725 (6th Cir. 2002).  Fennell's amended complaint alleges no facts that alter the Court's prior analysis of his housing assignment claim.  (ECF No. 8 at PageID 43.)

For all of these reasons, Fennell's claims for inadequate medical care, retaliation, false disciplinary reports, denial of equal protection, and wrongful housing reassignment fail in each instance to state § 1983 claims to relief.

### E.  Claim Of Conspiracy

According to the amended complaint, Lieutenant Bunting was "the 'driving factor' behind the who[le] conspiracy" against Fennell because "she signed a pre-detention form knowing I did not meet the criteria to be housed in such a unit." (ECF No. 9 at PageID 51.)  Fennell does not particularly describe what the plan of the supposed "conspiracy" was or which acts were undertaken by whom in furtherance of the "conspiracy."  These pleading insufficiencies defeat his claim.

A plaintiff may plead a conspiracy claim under § 1983, but he must do so with specificity. *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). "[V]ague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim." *Id.* (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). This pleading standard for a claim of civil conspiracy is "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008). "To prevail on such a claim, a plaintiff must show that there is 'an agreement between two or more persons to injure another by unlawful action.'" *Sango v. Place*, No. 16-2095, 2016 WL 9413659, at *2 (6th Cir. Dec. 21, 2016) (citation omitted)). The plaintiff must show "that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury." *Id*. Fennell's non-specific and unsupported claim of "conspiracy," *see* ECF No. 9 at PageID 51, fails to meet these pleading elements.

Furthermore, to the extent he makes a claim based on a "mentally painstaking … situation" created by the purported conspiracy, *see id.*, his effort is not well taken. The Prison Litigation Reform Act bars prisoner suits "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). "[E]ven though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward." *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010). Nothing in Fennell's amended complaint alleges any physical injury from any Defendant's actions, whether *de minimis* or otherwise.

### F. Claim Of Unprofessional Treatment

Fennell's amended claims about Nurse Christian's "unprofessional behavior," *see* ECF No. 9 at PageID 55 ("She told me that I was 'wasting her time'"), mirror those in his original pleading.

10

(*See* ECF No. 1 at PageID 2 (Christian was "negligent," "inadequate," "unprofessional," and "did not treat me").)  Merely restating his allegations a second time does not afford them merit.  Verbal abuse or harassment at the hands of prison officials (or other prisoners) does not constitute a violation of the Eight Amendment.  *See, e.g., Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004).  Accordingly, Fennell's allegation of Nurse Christian's "unprofessional[ism]" fails to state a claim for relief.  His contention that she should have rendered him different types of medical care, *see* ECF No. 9 at PageID 55, is a difference of opinion and not a constitutional claim.  *See Westlake,* 537 F.2d at 860.

### G. Claim Of Failure To Investigate

The amended complaint alleges that Security Chief Hubbard knew of Fennell's "dilemma" but failed to conduct an investigation or to reimburse Fennell's commissary account.  (*Id*. at PageID 50-51.)   Fennell makes similar failure-to-investigate allegations against Sergeant Mourning.  (*Id*. at PageID 52 (Mourning "neglected to investigate the matter").)   Fennell particularly describes neither the "dilemma" nor the "matter" that he contends Defendants should have investigated.

Prisoners have a First Amendment right to file a grievance against prison officials, but they have no similar right to an investigation of their allegations.  *See Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003).  Therefore, the amended complaint does not allege a claim to relief in this regard.

Furthermore, "gross negligence," such as Fennell alleges here against Hubbard and Mourning, does not involve a deprivation of rights secured by the "Constitution and laws" of the United States.  *See Adickes*, 398 U.S. at 150.  For this reason, Fennell's claim against Hubbard is not an allegation cognizable under § 1983.

11

### H. Claim Of Unconstitutional Conditions Of Confinement

Fennell refers to "unsanitary living conditions" in his segregated housing reassignment. (ECF No. 9 at PageID 51.) He was not permitted to have "cleaning materials." (*Id*. at PageID 48; *see also id*. at PageID 50 (Fennell endured "harsh living conditions").)

"Extreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, ... only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal quotations and citations omitted). "In certain extreme circumstances, the totality itself may amount to an [E]ighth [A]mendment violation, but there still must exist a specific condition on which to base the [E]ighth [A]mendment claim … [A] specific deprivation of one or more identifiable human needs must be established in order to prove an Eighth Amendment violation, [and] the plaintiff must show "a culpable state of mind on the part of [the defendant] prison officials." *Berryman v. Johnson*, No. 88-1239 & 88-1280, 1991 WL 150808, at *9-10 (6th Cir. Aug. 6, 1991) (internal citations omitted). "It is thus settled that Eighth Amendment claims based on prison conditions have both an objective component (denial of … 'the minimal civilized measure of life's necessities'), and a subjective component ('deliberate indifference')." *Id*. at *10 (internal citations omitted.)

Fennell's amended complaint satisfies neither prong.

First, Fennell alleges no facts from which to plausibly infer that his lack of cleaning supplies was "sufficiently serious." *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Although his reassignment occurred during the COVID-19 pandemic, *see* ECF No. 9 at PageID 51, Fennell

does not describe cell conditions there for which he needed cleaning materials. That is, he does not identify "conditions posing a substantial risk of serious harm." *See Farmer*, 511 U.S. at 834.

Second, the amended complaint does not allege facts demonstrating any Defendants' "sufficiently culpable state of mind" showing that they acted with "deliberate indifference" to a substantial risk that Fennell would suffer serious harm from lack of cleaning supplies. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). Burton's and Bunting's supposed vengeful motive in re-assigning Fennell's housing, *see* ECF No. 9 at PageID 48, 51-52 & 53-54, does not equate with deliberate indifference to a substantial risk of physical harm.

For these reasons, the amended complaint's characterization of Fennell's segregated housing as "unsanitary" does not suffice to render those accommodations unconstitutional.

### III. APPELLATE ISSUES

Under Federal Rule of Appellate Procedure 24(a) and 28 U.S.C. § 1915(a)(3), the Court has to also consider whether an appeal by Plaintiff here would be taken in good faith. *See Callihan v. Schneider*, 178 F.3d 800, 803–04 (6th Cir. 1999). Under Rule 24(a), if the district court permits a party to proceed in forma pauperis, that party may also proceed on appeal *in forma pauperis* without further authorization. That is, unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed *in forma pauperis*." Fed. R. App. P. 24(a)(3)(A). If the district court denies pauper status, the party may move to proceed *in forma pauperis* in the Court of Appeals. Fed. R. App. P. 24(a)(4)–(5).

The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). And the test for whether a party appeals in good faith is if the litigant seeks appellate review of any issue that is not frivolous. *Id.* "It would be inconsistent for a court to determine that

a complaint should be dismissed prior to service on Defendants but has sufficient merit to support an appeal *in forma pauperis*." *DePriest v. Prestress Servs., Inc.*, No. 13-2768-JDT-cgc, 2014 WL 1269933, at *1 (W.D. Tenn. Mar. 27, 2014) (citing *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983)). For the same reasons this Court dismisses Plaintiff's claims for failure to state a claim, the Court finds that an appeal would not be taken in good faith. The Court therefore **CERTIFIES**, under Federal Rule of Appellate Procedure 24(a), that any appeal here by Plaintiff would not be taken in good faith. And the Court **DENIES** leave to proceed on appeal *in forma pauperis*. If Plaintiff appeals, he must pay the full $505 appellate filing fee or move for leave to appeal *in forma pauperis* with a supporting affidavit in the Sixth Circuit. *See* Fed. R. App. P. 24(a)(5).

IV.   **AMENDMENT UNDER THE PLRA**

The Court also **DENIES** leave to amend under 28 U.S.C. §§ 1915(e)(2) and 1915A(b). The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). While "liberality" is preferred in allowing amendment at the screening stage under the PLRA, *see Lucas v. Chalk*, 785 F. App'x 288, 292 (6th Cir. 2019), the Sixth Circuit has also stated "[i]f it is at all possible that the party ... can ... state a claim for relief, the court should dismiss with leave to amend." *Id.* (quoting *Brown v. Matauszak*, 415 F. App'x 608, 614 (6th Cir. 2011)).

The Court has already allowed Fennell to amend his complaint. And yet, he still failed to state a claim for relief. So here, the Court finds that further amendment would be futile. *See Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("If it is crystal clear that ... amending the complaint would be futile, then a *sua sponte* dismissal may

14

stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001). For these reasons, the Court finds that it should not allow Plaintiff to amend his claims yet another time.

## V.     CONCLUSION

For all of the reasons explained above:

(1)     The amended complaint (ECF No. 9) is **DISMISSED WITH PREJUDICE** in its entirety for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b); and

(2)     Leave to amend is **DENIED**. The Court recommends that the dismissal of this case be treated as a strike pursuant to 28 U.S.C. § 1915(g). *See Simons v. Washington*, No. 20-1406, 2021 WL 1727619, at *1 (6th Cir. May 3, 2021).

**SO ORDERED**, this 31st day of August, 2021.

>      *s/John T. Fowlkes, Jr.*
> JOHN T. FOWLKES, JR.
> UNITED STATES DISTRICT JUDGE